UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CORY S.,

                Plaintiff,

       v.                                           **DECISION AND ORDER**
                                                                19-CV-6608S
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

      1.      Plaintiff Cory S.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed his application for benefits under Title II of the Act with the Social Security Administration on February 17, 2016, and for benefits under Title XVI of the Act on March 1, 2016. (R.[2] at 69, 191.) Plaintiff alleged disability beginning on March 1, 2015, due to "severe depression with psychosis, disturbance in personality, bilateral leg problems, back problems, chronic pain, anxiety, [and] dyslexia." (R. at 69.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by his first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

administrative law judge ("ALJ"). ALJ Connor O'Brien held a hearing on August 10, 2018, at which Plaintiff, represented by his attorney, appeared and testified. (R. at 31-65.) Vocational Expert Peter A. Manzi also appeared and testified by telephone. At the time of the hearing, Plaintiff was 41 years old, with a high school diploma and prior work experience as a dental lab technician. (R. at 37, 197.)

3.  The ALJ considered the case de novo and, on October 2, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 13-26.) On June 21, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on August 20, 2019, challenging the Commissioner's final decision.[3]

4.  Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 12, 17.)  Plaintiff filed a response on August 12, 2020 (Docket No. 18), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is granted, and Defendant's motion is denied.

5.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[3] The ALJ's October 2, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

9. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

10. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of March 1, 2015. (R. at 15.) At step two, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the right ankle and left knee, panic disorder, major depressive disorder, generalized anxiety behavior, and substance abuse dependence in remission. (Id.)

11. The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 16.)

12. Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, except that

> he requires a sit and stand option that allows for changing position every 60 minutes for up to five minutes. [He] cannot climb a rope, ladder, or scaffold, or balance on narrow, slippery, or moving surface. [He] can occasionally stoop, crouch, climb stairs or ramps, kneel, and crawl. [He] requires three additional short, less than five minute, breaks in addition to the regular scheduled breaks. [He] can adjust to occasional changes in the work setting and make simple work-related decisions. [He] can interact with the public, but cannot perform tandem or teamwork.

(R. at 18.)

13. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (R. at 24.) At step five, the ALJ found that there is a significant number of jobs in the national economy that Plaintiff can perform. (R. at 24.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 25.)

14. Plaintiff argues that the ALJ's final determination is not supported by substantial evidence because the ALJ failed to properly apply the treating physician rule to numerous opinions in the record, and because the RFC is less restrictive than every medical opinion in the record. Defendant argues that the ALJ properly rejected the opinions of numerous treating sources due to their inconsistency with the overall record.

15. Plaintiff argues that the ALJ erred in the weight it assigned to the medical opinions in the record. Defendant argues that the ALJ properly applied the treating physician rule to each opinion it considered.

16. "It is well-settled that 'the medical opinion of a [plaintiff's] treating [source] is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence.'" Hatcher v. Astrue, 802 F.Supp.2d 472, 476 (W.D.N.Y.2011) (quoting Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000)) (alteration added). "When a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam); see also Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008); 20 C.F.R. § 404.1527(c)(2)(i), (2)(ii), (3)–(6). After considering the above factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." Burgess, 537 F.3d at 129 (alteration in original). "Generally, the longer a treating source has treated [the

claimant] and the more times [the claimant] ha[s] been seen by a treating source, the more weight [the Commissioner] will give to the source's medical opinion." Id.

17. The failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Id. at 129–30 (quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)]. The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion. Goble v. Colvin, No. 15-CV-6302 CJS, 2016 WL 3179901, at *3 (W.D.N.Y. June 8, 2016) (citing Burgess, 537 F.3d at 131).

18. An ALJ "should consider information from 'other sources,' such as social workers, which 'may also help ... to understand how [the claimant's] impairment affects [her] ability to work.'" Allen v. Comm'r of Soc. Sec., 351 F. Supp. 3d 327, 335–36 (W.D.N.Y. 2018). The amount of weight to give the opinions of "other sources" is based in part on "the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." Williams v. Colvin, No. 15-CV-6119-FPG, 2016 WL 1466562, at *4 (W.D.N.Y. Apr. 14, 2016).

19. The record in this case shows that Plaintiff suffered from ankle, leg, and back impairments and from various mental impairments. Imaging on March 18, 2016, showed that his femur was healing, with no evidence of acute fracture, but his tibia revealed that orthopedic plastic had shifted, with a possible avulsion fracture. (R. at 343-44.) A physical examination by Dr. Kyle Judd on the same day found no significant instability of Plaintiff's ankle, but a subtle right-sided limp. (R. at 339.) Dr. Judd opined

that Plaintiff's pain was likely to stabilize once he weaned off methadone, which Plaintiff was taking as part of his substance abuse treatment. (Id.).

20.     On April 28, 2016, consultative examiner Harbinder Toor, M.D., observed that Plaintiff had an abnormal gait, and limped to his right side, and had difficulty getting on and off the exam table and rising from his chair. (R. at 632.) Dr. Toor found that Plaintiff's lumbar flexion was 20 degrees, and he had a positive straight leg raise test. There was also tenderness and swelling in Plaintiff's right ankle. (R. at 632.) Dr. Toor found no evidence of subluxations, ankylosis or thickening. Dr. Toor opined that Plaintiff had moderate to marked limitations in standing, walking, bending, lifting, and carrying, and moderate limitations sitting for a long time. (R. at 635.)

21.     In terms of mental-health limitations, Plaintiff underwent chemical dependency treatment throughout the period from 2014 to 2018. Plaintiff had several mental health arrests, including one on January 28, 2016, at a methadone clinic for excessive somnolence.[4] (R. at 383.) After multiple attempts to establish suboxone treatment, Plaintiff established treatment at Unity Health for addiction counseling, and at the Catholic Family Center for mental health treatment.

22.     At a mental health consultative examination on April 29, 2016, Dr. Christine Ransom noted that Plaintiff was using IV heroin, and in rehab. She observed that he was hearing voices and took lithium daily. (R. at 637-41.) On examination, she observed that he had adequate hygiene and grooming, a coherent thought process, no evidence of

---

[4] "Somnolence is a term used to describe the state of sleepiness. It can refer to the drowsiness that naturally occurs as part of the circadian rhythms that direct your sleep/wake patterns. It can also refer to disorders that interfere with circadian rhythm and cause us to be abnormally sleepy, or be associated with certain medications or treatments that cause drowsiness." "What is Somnolence," https://www.verywellhealth.com/somnolence-meaning-and-causes-380185. Last accessed 2/11/2021 at 9:30 AM.

hallucinations, and a mildly dysphoric affect. (R. at 638-39.) Dr. Ransom diagnosed Plaintiff with panic disorder, major depressive disorder with psychotic features, history of cocaine dependence, and heroin dependence, recurrent. (R. at 640.) Dr. Ransom opined that Plaintiff had mild difficulty following and understanding simple directions or performing complex tasks, or relating adequately with others and that his mild psychiatric conditions would not significantly interfere with his ability to function on a daily basis. (Id.)

23.    On September 25, 2015, Psychiatrist Gloria Baciewicz, M.D., filled out a Psychological Assessment for Determination of Employability for Monroe County DSS. (R. at 887-90.) Plaintiff had been a patient with Dr. Baciewicz since June 19, 2014. (R. at 887.) She observed that Plaintiff was trying to deal with substance abuse and mental health issues, and recommended supportive living. (R. at 890.) His medications caused sedation. (R. at 888.) Dr. Baciewicz opined that Plaintiff was "moderately limited," defined on the form as "unable to function 10-25% of the time," in the areas of following and understanding instructions, capacity to maintain attention and concentration for rote tasks, capacity to attend to a routine and maintain a schedule, and capacity to perform low stress and simple tasks. (R. at 889.) Dr. Baciewicz opined that this condition would last for 6 months. (Id.)

24.    Physician's Assistant Cheryl Kast filled out employability assessments for Plaintiff on September 22, 2015, October 20, 2015, March 3, 2016, January 12, 2017, and May 12, 2017. (R. at 771-75, 333, 726, 769-72, 765-68.) On May 12, 2017, Ms. Kast stated that she had seen Plaintiff 10 times in the past 12 months. (R. at 765.) She opined that Plaintiff could only work up to 8 hours per weeks with accommodations, including not

standing more than 15 minutes at a time, changing his position as needed, and lower stress. (R. at 765-68.)

25.	Jamie-Lynn Selden, LCSW, filled out employability assessments for Plaintiff on May 17, 2016, August 23, 2016, November 28, 2016, February 16, 2017, and June 12, 2017. (R. at 662-65, 873-76, 869-72, 861-64.) On June 12, 2017, Selden noted that she had seen Plaintiff for 16 sessions in the past 12 months. She noted that he was calm, alert and oriented, but checked boxes indicating that Plaintiff was "moderately limited," meaning "unable to function 10-25% of the time", in his capacity to understand and follow directions, perform simple and complex tasks independently. (R. at 863.) Andrea Woodard, LMHC, took over from Ms. Selden and met with Plaintiff on February 22, 2018, March 7, 22, and 27, 2018, April 11 and 26, 2018, May 31, 2018, and June 27, 2018. (R. at 1123, 1119, 1116, 1113, 1103, 1100, 1097, 1087.)

26.	Dr. Odysseus Adamides oversaw Plaintiff's mental health medications at Catholic Family Center. On February 7 and April 4, 2018, he continued Plaintiff's prescriptions for aspirin, lyrica, Seroquel, lithium, rozerem, and suboxone. (R. at 1129, 1110.)

27.	On May 30, 2018, Ms. Woodard and Dr. Adamides filled out a medical source opinion. (R. at 761-63.) They noted Plaintiff's diagnoses of Bipolar Severe with psychosis, opioid and cocaine dependence, chronic mild PTSD, and personality disorder, noting that Plaintiff continued to struggle with depression, anxiety and psychoses. (R. at 761.) Dr. Adamides indicated marked limitations in Plaintiff's ability to understand, interact, and concentrate, and extreme limitations in the ability to adapt or manage oneself. (R. at 761-63.)

28.    On December 11, 2017, Tracey Welch, LMHC, filled out an employability assessment for Plaintiff. (R. at 857-60.) She noted that his medications—which included Lyrica, Seroquel, lithium, and Rozerem—caused sleepiness and sleeplessness. (R. at 858.) She filled out check boxes indicating that Plaintiff had moderate limitations –defined as unable to function between 10-25% of the time—in following, understanding, and remembering simple and complex directions, performing simple and complex tasks, maintaining attention and concentration for rote tasks, and demonstrating the capacity to perform low stress and simple tasks. (R. at 859.)

29.    The ALJ gave great weight to Dr. Toor's opinion, finding it consistent with Dr. Toor's physical evaluation as well as other physical evaluations. (R. at 22.) The ALJ did not state the weight given to Dr. Ransom's opinion, but considered that the mild mental limitations Dr. Ransom found were "not entirely in line with the medical record," and that a "one-time examination [was] not the best way to evaluate the impact of the mental impairments." (Id.)

30.    The ALJ gave little weight to the opinion signed by Dr. Adamides and Ms. Woodard. (R. at 23.) The ALJ based this on (a) the fact that Dr. Adamides oversaw medication management while Woodard had more face-to-face contact with Plaintiff, (b) the opinion was in a check-the-box format, and (c) other evidence did not support the "extreme limitations" in this opinion. (Id.) The ALJ also did not give controlling weight to Dr. Baciewicz's opinion, instead treating it collectively with the opinions of Ms. Welch and Ms. Selden. (Id.) The ALJ noted that all three opinions were "based on a treating relationship with the claimant," but gave them some weight, because they were on check-the-box forms intended for another forum. (Id.)

31.     The ALJ failed to apply the treating physician rule to the opinions of both Dr. Adamides and Dr. Baciewicz. Regarding Dr. Adamides, after finding his opinion not consistent with the record, the ALJ was then required to discuss the Burgess factors. Especially in the case of a mental impairment, where Dr. Adamides chose to repeatedly renew Plaintiff's mental health prescriptions, this relationship is relevant information. Additionally, because Dr. Baciewicz was a treating physician, the ALJ should have considered her opinion separately from those of Plaintiff's mental health counselors. Colon Medina v. Comm'r of Soc. Sec., 351 F. Supp. 3d 295, 303 (W.D.N.Y. 2018) (finding error where ALJ considered opinions collectively and failed to explain the weight given to each separate opinion.); see also Delgado v. Astrue, No. 09-CV-01084 (GTS), 2011 WL 1113864, at *6 (N.D.N.Y. Jan. 31, 2011) ("Finally, while the ALJ indicated that she ... relied heavily on the SSA consultative sources when forming the RFC, she failed to separately weigh each medical opinion. This error provides a further basis for remand."), adopted, 2011 WL 1113861 (N.D.N.Y. Mar. 24, 2011).

32.     If the ALJ chose not to give Dr. Baciewicz's opinion controlling weight, it should then have applied the Burgess factors, including the amount of time she treated Plaintiff and her specialization in psychiatry, in explaining the weight he did give the opinion. Instead, the ALJ gave as a reason for rejecting Dr. Baciewicz's opinion the fact that it was rendered on a check-the-box form intended for another forum. (R. at 23.) But the fact that an opinion was rendered in a "check-the-box" format is not a proper reason for the ALJ to dismiss them. Goble v. Colvin, No. 15-CV-6302 CJS, 2016 WL 3179901, at *5 (W.D.N.Y. June 8, 2016) (citing Thornton v. Colvin, No. 3:13-CV-1558 CSH, 2016 WL 525994 at *5 (D. Conn. Feb. 9, 2016) ("A physician who checks one box or another

12

is, by that action, expressing a medical opinion."); see also Schaal v. Apfel, 134 F.3d 496, 499 (2d Cir. 1998) (stating that check-the-box questionnaires are a proper format for a treating physician to express an opinion).

33. Although an ALJ is tasked with formulating an RFC, and need not base it on any one opinion, in this case it is striking that the RFC does not reflect either of the medical opinions of treating physicians, which both state Plaintiff's inability to maintain attention and concentration or perform even low-stress jobs. When treating physicians with ongoing relationships with Plaintiff opined that he did not have the mental capacity to work for a full eight-hour workday, and where the ALJ failed to properly consider the Burgess factors in explaining the weight he gave these treating physicians' opinions, this Court cannot follow the ALJ's reasoning. The RFC is thus not based on substantial evidence.

34. Plaintiff also argues that the ALJ failed to properly consider the opinions of other treatment providers, and to consider his bipolar disorder and personality disorder either as "severe" at step 2, or under the relevant listings. Because remand is warranted on other grounds, this Court will not address these arguments here. On remand, the ALJ shall consider all the medical evidence according to the regulatory factors.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 17) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this opinion.

FURTHER, that the Clerk of Court is DIRECTED to close this case.

SO ORDERED.

Dated:   February 11, 2021
        Buffalo, New York

                                    <u>s/William M. Skretny</u>
                                    WILLIAM M. SKRETNY
                                    United States District Judge